WO          IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

ANTONIA STUART,                    )
                                   )
                                   )
                    Plaintiff,     )
                                   )
          vs.                      )
                                   )
COMMISSIONER OF SOCIAL SECURITY    )
ADMINISTRATION,                    )
                                   )          No. 3:17-cv-8031-HRH
                    Defendant.     )          (Prescott Division)
_____)


O R D E R

This is an action for judicial review of the denial of disability benefits under Title II

of the Social Security Act, 42 U.S.C. §§ 401-434.  Plaintiff Antonia Stuart has timely filed

her opening brief,[1] to which defendant, the Commissioner of the Social Security Administra-

tion, has responded.[2]  Oral argument was not requested and is not deemed necessary.

Procedural Background

On January 18, 2007, plaintiff filed an application for disability benefits under Title

II of the Social Security Act.  Plaintiff alleged that she became disabled on September 22,

2004.  Plaintiff alleges that she is disabled due to herniated cervical discs, bunionectomy, and

wrist surgery.  Plaintiff's application was denied initially and upon reconsideration.  After

_____

[1]Docket No. 9.

[2]Docket No. 10.

-1-

a March 17, 2009 hearing, an administrative law judge (ALJ) denied plaintiff's claim. Plaintiff sought review of the ALJ's unfavorable decision; and, on July 1, 2011, the Appeals Council remanded for a new hearing because the recording of the March 2009 hearing could not be located. A new hearing was held on October 24, 2012. On January 31, 2013, the ALJ again denied plaintiff's claim. Plaintiff sought review of this unfavorable decision, and on April 21, 2014, the Appeals Council denied her request for review. Plaintiff sought judicial review, and on November 25, 2014, pursuant to a stipulation by the parties, the court remanded the case for further proceedings. On remand, the ALJ held an administrative hearing on September 30, 2015. On March 29, 2016, the ALJ again denied plaintiff's claim. On January 12, 2017, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's March 29, 2016 decision the final decision of the Commissioner. On February 17, 2017, plaintiff commenced this action in which she asks the court to find that she is entitled to disability benefits.

## General Background

Plaintiff was born on February 27, 1963. She was 52 years old at the time of the September 2015 administrative hearing. Plaintiff has a high school education. Plaintiff's past relevant work includes work as an administrative assistant, plant secretary, fast food supervisor, and secretary.

## The ALJ's Decision

The ALJ first determined that plaintiff last "met the insured status requirements of the

Social Security Act on December 31, 2009."[3]  Thus, plaintiff "must establish disability on

or before that date in order to be entitled to a period of disability and disability insurance

benefits."[4]

The ALJ then applied the five-step sequential analysis used to determine whether an

individual is disabled.[5]

At step one, the ALJ found that plaintiff "did not engage in substantial gainful activity

during the period from her alleged onset date of September 22, 2004 through her date last

---

[3]Admin. Rec. at 1350.

[4]Admin. Rec. at 1348.

[5]The five steps are as follows:

> Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled. If not, proceed to step two.
> Step two: Is the claimant's alleged impairment sufficiently severe to limit ... her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.
> Step three:  Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1?  If so, the claimant is disabled. If not, proceed to step four.
> Step four:  Does the claimant possess the residual functional capacity ("RFC") to perform ... her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow ... her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

insured of December 31, 2009...."[6]

At step two, the ALJ found that plaintiff "had the following severe impairments: degenerative disc disease of the cervical spine and right foot metatarsalgia...."[7] The ALJ found plaintiff's left knee impairment non-severe because "[t]he medical evidence available is insufficient to establish twelve months of continuous limitations...."[8]

At step three, the ALJ found that plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1...."[9]

"Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC." Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1222-23 (9th Cir. 2009). The ALJ found that plaintiff "had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)[[10]] except the claimant can perform occasional

_____

[6]Admin. Rec. at 1350.

[7]Admin. Rec. at 1350.

[8]Admin. Rec. at 1352-1353.

[9]Admin. Rec. at 1353.

[10]Light work is defined as work involving

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or

(continued...)

-4-

handling, grasping, fingering and reaching."[11]

The ALJ found plaintiff's pain and symptom statements less than credible because although plaintiff alleged an onset date of September 22, 2004, "there is no medical evidence available on record until January 2006."[12]  The ALJ also found plaintiff's statements less than credible because "a substantial amount of the medical evidence of record deals with a period after the claimant's date last insured expired."[13]  And, the ALJ found plaintiff's statements less than credible because they were inconsistent with the relevant medical evidence of record, they were inconsistent with her reported daily activities, her neck pain was "managed adequately with conservative treatment,'[14] and her right foot pain improved with treatment.[15]

The ALJ gave partial weight [16] to Dr. Rodrigo's opinion.[17]  The ALJ also gave partial

---

[10](...continued)
> leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b).

[11]Admin. Rec. at 1353.

[12]Admin. Rec. at 1355.

[13]Admin. Rec. at 1355.

[14]Admin. Rec. at 1355.

[15]Admin. Rec. at 1356.

[16]Admin. Rec. at 1357.

[17]On July 21, 2007, Rodney Rodrigo, M.D., examined plaintiff.  Admin. Rec. at 406.
(continued...)

weight[18] to Dr. Glodek's opinion.[19]  And, the ALJ gave partial weight[20] to Dr. Otto's

opinion.[21] The ALJ gave little weight[22] to Dr. Savage's opinion.[23]  The ALJ also gave little

---

[17](...continued)
Dr. Rodrigo opined that plaintiff could lift/carry 10 pounds frequently and 20 pounds
occasionally, had postural limitations on bending, stooping, and crouching and

> she could be expected to do these only on a limited basis due to
> her history of right foot and neck pain.  There are manipulative
> limitations on reaching, handling, feeling, grasping, and feeling
> due to her previous surgeries on her bilateral wrists and she is
> restricted to performing these activities on an occasional basis
> only.

Admin. Rec. at 410.

[18]Admin. Rec. at 1358.

[19]On September 4, 2007, Thomas Glodek, M.D., opined that plaintiff could
occasionally lift/carry 20 pounds; could frequently lift/carry 10 pounds; could stand/walk for
6 hours; could sit for 6 hours; was unlimited in pushing and pulling; could never climb
ladders/ropes/scaffolds; could occasionally climb ramps/stairs; could frequently balance,
stoop, kneel, crouch, and crawl; and should avoid concentrated exposure to hazards.  Admin.
Rec. at 420-423.

[20]Admin. Rec. at 1359.

[21]On March 19, 2008, Steven Otto, M.D., opined that plaintiff could occasionally
lift/carry 20 pounds; frequently lift/carry 10 pounds; stand/walk for at least 2 hours; sit for
6 hours; was unlimited as to pushing/pulling; could occasionally climb ramps/stairs; could
never climb ladders/ropes/scaffolds; could frequently balance, stoop, kneel, crouch, and
crawl; and should avoid concentrated exposure to hazards.  Admin. Rec. at 606-609.

[22]Admin. Rec. at 1359.

[23]Dr. Savage was a foot and ankle specialist who treated plaintiff in 2008.  On
September 8, 2008, Dr. Savage opined that plaintiff could sit less than 1 hour; stand less than
1 hour; would need to alternate sitting and standing; could adequately use her hands for
simple grasping, pushing & pulling, and fine manipulation; could use her left foot but not her
(continued...)

weight[24] to Dr. Bokhari's opinion.[25]  The ALJ gave little weight[26] to Dr. Botti's opinion that

plaintiff's right thumb might never fully improve.[27]  The ALJ gave little weight[28] to Dr.

Venger's opinion.[29]  And, the ALJ gave any medical opinions associated with plaintiff's

---

[23](...continued)
right foot to operate foot controls; could frequently lift/carry 10 pounds; could occasionally lift/carry 20 pounds; could never climb, balance, stoop, kneel, crouch, or crawl; could frequently reach above shoulder level; and could never drive.  Admin. Rec. at 690-691.  Dr. Savage further opined that plaintiff's pain prevented her from working full time at even a sedentary position.  Admin. Rec. at 692.

[24]Admin. Rec. at 1360.

[25]Dr. Bokhari was a cardiologist who began treating plaintiff in September 2008.  Admin. Rec. at 686.  On October 30, 2008, Dr. Bokhari opined that plaintiff could sit less than 1 hour; could stand less than 1 hour; could adequately her use right hand for simple grasping, pushing & pulling, and fine manipulation but could not use her left hand for these tasks; could operate foot controls with her left foot but not her right foot; could frequently lift/carry 10 pounds; could occasionally lift/carry 20 pounds; could never climb, balance, stoop, kneel, crouch, or crawl; could reach above shoulder level frequently; had severe restrictions of activities involving unprotected heights; and had moderate restrictions of activities involving moving machinery and driving automobile equipment.  Admin. Rec. at 699-700.

[26]Admin. Rec. at 1360.

[27]Dr. Botti was an orthopaedic surgeon who treated plaintiff's right thumb and left knee. On April 11, 2008, Dr. Botti stated that the fusion of plaintiff' right thumb should remain stable but the sensitivity that she had in that area might "never fully improve."  Admin. Rec. at 633.

[28]Admin. Rec. at 1361.

[29]Dr. Venger began treating plaintiff's pain in 2012.  Admin. Rec. at 1209.  On June 22, 2012, Dr. Venger opined that plaintiff could sit for 3 hours; could stand/walk for less than 1 hour; had no limitations with grasping, pushing/pulling, and fine manipulation; could use her hands for repetitive motion tasks; could use her left foot for repetitive motion tasks, could not use her right foot for repetitive motion tasks; could frequently lift/carry 5 pounds; could
(continued...)

Worker's comp claim little weight.[30]

At step four, the ALJ found that "[t]hrough the date last insured, the claimant was unable to perform any past relevant work...."[31]

At step five, the ALJ found that "there were jobs that existed in significant numbers in the national economy that the claimant could have performed...."[32] The ALJ found that plaintiff could work as a furniture rental consultant, an usher, or a groover/striper operator, all of which are light, unskilled jobs.[33] This finding was based on the testimony of the vocational expert.[34]

---

[29](...continued)
occasionally lift/carry 10 pounds; could never climb, balance, stoop, kneel, crouch or crawl; could occasionally reach above shoulder level; could never be around unprotected heights or moving machinery; and was mildly restricted as to exposure to marked changes in temperature and humidity. Admin. Rec. at 1295-1296. Dr. Venger also opined that plaintiff's pain had a moderate effect on attention and concentration and that plaintiff's pain would prevent her from working full time at even a sedentary position. Admin. Rec. at 1298.

[30]Admin. Rec. at 1361. On June 22, 2012, Dr. Subotnick evaluated plaintiff in connection with her Worker's Comp case and opined that plaintiff could "only stand or walk for limited periods of time 15-20 minutes on level surfaces." Admin. Rec. at 1329. The other two pages in the record cited by the ALJ did not contain opinions by doctors treating plaintiff in connection with her Worker's Comp claim. See Admin. Rec. at 1026 (first page of Dr. Maher's December 9, 2010 treatment notes) and 1655 (second page of Dr. Hall's January 6, 2015 treatment notes).

[31]Admin. Rec. at 1362.

[32]Admin. Rec. at 1362.

[33]Admin. Rec. at 1363.

[34]Kathryn Atha testified as the vocational expert at the September 30, 2015 hearing.
(continued...)

-8-

The ALJ concluded that "[t]he claimant was not under a disability, as defined in the Social Security Act, at any time from September 22, 2004, the alleged onset date, through December 31, 2009, the date last insured...."[35]

Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner...." The court "properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards." Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). "'To determine whether substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Id. (quoting Andrews, 53 F.3d at 1039). If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the Commissioner's decision. Id. But, the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of supporting evidence.'" Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting

---

[34](...continued)
Admin. Rec. at 1408-1419.

[35]Admin. Rec. at 1363.

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).

Discussion

Plaintiff first argues that the ALJ erred at step two in finding her left knee impairment non-severe. "The Social Security Act defines disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]'" Miller v. Colvin, 174 F. Supp. 3d 1210, 1219 (D. Ariz. 2016) (quoting 42 U.S.C. § 423(d)(1)(A)). "'[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims.'" Id. (quoting Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996)). "An impairment or combination of impairments may be found 'not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" Id. (quoting Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005)).

At step two, the ALJ found plaintiff's left knee impairment non-severe because "[t]he medical evidence available is insufficient to establish twelve months of continuous limitations...."[36] This was error because the medical evidence of record shows that the limitations associated with plaintiff's left knee continued for more than twelve months.

Plaintiff began complaining of left knee pain on June 19, 2008. On that day, her "left

---

[36]Admin. Rec. at 1353.

knee show[ed] a marked effusion" and she had "marked positive McMurray's test."[37] A June 20, 2008, MRI of plaintiff's left knee showed a "very small baker's cyst in the popliteal fossa."[38] On July 21, 2008, Dr. Botti's assessment was "[l]eft knee patella chondromalacia with Baker's cyst...."[39] On November 17, 2008, plaintiff was "tender over the posteromedial aspect of the ... left knee. She is also tender over the lateral facet and the inferior pole of the patella."[40] Dr. McEleney noted that plaintiff "has been going forward with a lot of therapy to no avail. She continues to have symptoms. ... On my review of the MRI, I believe she does have posteromedial meniscal pathology. She may benefit from arthroscopy."[41] On December 23, 2008, plaintiff had arthroscopic lateral release of her left knee.[42] Although plaintiff did well after this surgery,[43] by April 8, 2009, she was experiencing pain and had "multiple questions about an injection."[44] On exam that day, "[m]inimal medial and lateral joint line tenderness is noted. Patellar exam is positive for crepitus and lateral facet tenderness. Range of motion is good within range of pain. Strength is good. Distal

---

[37]Admin. Rec. at 719.

[38]Admin. Rec. at 651.

[39]Admin. Rec. at 874.

[40]Admin. Rec. at 738.

[41]Admin. Rec. at 738.

[42]Admin. Rec. at 734.

[43]Docket No. 739, 752.

[44]Admin. Rec. at 785.

neurovascular exam is intact. Gait pattern is acceptable."[45] An injection of Depo-Medrol 80 milligrams and 2cc of 1% lidocaine was administered.[46] On May 20, 2009, plaintiff complained that she was still having "occasional pains that reach 8/10" and Dr. McEleney noted that plaintiff "has tried cortisone injections, physical therapy, knee sleeves and other conservative measures which have not improved her symptoms."[47] On exam, "[m]edial joint line tenderness [was] noted. Positive effusion is also noted. The patient demonstrates slow and decreased range of motion. Strength is intact. Distal neurovascular examination is intact. Gait pattern is acceptable."[48] On May 29, 2009, an MRI of plaintiff's left knee showed a "small tear involving the inferior articular surface and possibly the superior surface of the posterior horn of the lateral meniscus", "grade 1 and 2 signal changes ... in both menisci ..., which is probably secondary to mild central myxoid degeneration", and a "small popliteal cyst."[49] On July 24, 2009, plaintiff had left knee surgery to repair a meniscus tear.[50] On October 7, 2009, plaintiff's left knee was "still hurting. She states that finishing therapy

---

[45]Admin. Rec. at 785.

[46]Admin. Rec. at 785.

[47]Admin. Rec. at 784.

[48]Admin. Rec. at 784.

[49]Admin. Rec. at 778.

[50]Admin. Rec. at 776.

she has full motion and strength; however, she is still having pain."[51]  In November 2009, Dr.

Botti noted that plaintiff's

> biggest complaint at this point in time is her left knee.  She had
> surgery done in December of 2008 as well as in July of 2009,
> and continues to have significant swelling and what sounds like
> tendonitis type pain.  The plan will be for her to continue to
> progress with her activities and her therapy with that left
> knee.[52]

And, although this was done after plaintiff's date of last insured, plaintiff eventually had a

total left knee replacement.[53]  This evidence shows that plaintiff's left knee impairment lasted

for more than twelve months and that it was more than a slight abnormality.  It was error for

the ALJ to find plaintiff's left knee impairment non-severe.

The question then is whether this error was harmless.  An error is harmless "where it

is 'inconsequential to the ultimate nondisability determination.'"  Molina v. Astrue, 674 F.3d

1104, 1115 (9th Cir. 2012) (quoting Carmickle v. Comm'n, Social Sec. Admin., 533 F.3d

1155, 1162 (9th Cir. 2008)).

The ALJ's step-two error was not harmless.  If the ALJ had considered plaintiff's left

knee impairment severe, then it is possible that the ALJ would have found plaintiff was

limited to less than six hours of standing/walking a day, which would have limited her to

sedentary work, rather than light work as the ALJ found.  If she were limited to sedentary

---

[51]Admin. Rec. at 779.

[52]Admin. Rec. at 826.

[53]Admin. Rec. at 1028.

work with the same manipulative limitations found by the ALJ (occasional handling, grasping, fingering and reaching[54]), it is possible that the ALJ would have found plaintiff disabled. <u>See</u> SSR 83–14 (noting that a limitation to unskilled sedentary work with an additional significant loss of bilateral manual dexterity can warrant a conclusion of disabled).

This case is not similar to <u>Lewis v. Astrue,</u> 498 F.3d 909 (9th Cir. 2007), the case cited by defendant in support of her argument that the ALJ's step-two error was harmless. There, Lewis argued that the ALJ erred in not finding his bursitis severe. <u>Id.</u> at 911. The court found this error harmless because the ALJ proceeded beyond step two and discussed Lewis' bursitis and any limitations flowing therefrom at step four. <u>Id.</u> But here, the ALJ did not discuss plaintiff's left knee impairment or any limitations flowing therefrom after step two. And, as discussed above, had the ALJ properly considered plaintiff's left knee impairment a severe impairment, she might have included some other physical limitations in plaintiff's RFC.

Plaintiff next argues that the ALJ erred in failing to include in her RFC any limitations related to her right foot impairment. The ALJ found plaintiff's right foot metatarsalgia to be a severe impairment.[55] Yet, the ALJ included no limitations related to this impairment in the RFC. Plaintiff argues that this was error and that this error was not harmless.

Having found plaintiff's right foot impairment severe at step two, the ALJ was

---

[54]Admin. Rec. at 1353.

[55]Admin. Rec. at 1350.

required to consider what limitations, if any, resulted from that impairment. Here, the ALJ devoted several pages of her decision[56] to a discussion of plaintiff's right foot impairment, in which the ALJ explained why she was not including any limitations associated with this impairment in plaintiff's RFC. Plaintiff does not challenge the ALJ's explanation as to why no limitations associated with her right foot impairment were not being included in the RFC. Rather, plaintiff only argues that the ALJ had to include limitations in the RFC related to her right foot impairment because the ALJ had found that impairment severe. This argument fails. "An ALJ's findings at step two ... are not limitations that ha[ve] to be included in the ultimate RFC assessment." Reynolds v. Colvin, Case No. 6:13-cv-0063-BR, 2014 WL 2457949, at *4 (D. Or. June 2, 2014) (citation omitted). "The fact that an impairment is found to be severe at step two of the sequential process does not necessarily translate to work-related limitations in the RFC at step four or five of the sequential process." Rayford v. Astrue, Case No. EDCV 11-0202-JEM, 2012 WL 3839526, at *9 (C.D. Cal. Sept. 5, 2012). The ALJ was not required to include limitations related to plaintiff's right foot impairment in the RFC simply because the ALJ found plaintiff's right foot impairment severe.

Finally, plaintiff argues that the ALJ erred in finding her pain and symptom statements less than credible. "An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible." Garrison v. Colvin, 759 F.3d

---

[56]Admin. Rec. at 1356-1360.

995, 1014 (9th Cir. 2014). "'First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). "In this analysis, the claimant is not required to show 'that h[is] impairment could reasonably be expected to cause the severity of the symptom []he has alleged; []he need only show that it could reasonably have caused some degree of the symptom.'" Id. (quoting Smolen, 80 F.3d at 1282). "Nor must a claimant produce 'objective medical evidence of the pain or fatigue itself, or the severity thereof.'" Id. (quoting Smolen, 80 F.3d at 1282). "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1014-15 (quoting Smolen, 80 F.3d at 1281). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" Id. at 1015 (quoting Moore v. Comm'r of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)). "In evaluating the claimant's testimony, the ALJ may use 'ordinary techniques of credibility evaluation.'" Molina, 674 F.3d at 1112 (quoting Turner v. Comm'r of Social Sec., 613 F.3d 1217, 1224 n.3 (9th Cir. 2010)). "For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and whether the claimant engages in daily

activities inconsistent with the alleged symptoms[.]" Id. (internal citations omitted).

The ALJ found plaintiff's pain and symptom statements less than credible because although plaintiff alleged an onset date of September 22, 2004, "there is no medical evidence available on record until January 2006."[57] The ALJ also found plaintiff's statements less than credible because "a substantial amount of the medical evidence of record deals with a period after the claimant's date last insured expired."[58] And, the ALJ found plaintiff's statements less than credible because they were inconsistent with her reported daily activities, her neck pain was "managed adequately with conservative treatment,"[59] her right foot pain improved with treatment,[60] and her statements were inconsistent with the relevant medical evidence of record.[61] Plaintiff argues that none of these were clear and convincing reasons.

The first reason, that plaintiff did not have medical evidence dating back to her alleged onset date of September 22, 2004, was not a clear and convincing reason. There is evidence in the record from Dr. Cushenberry who treated plaintiff from September 28, 2004 through July 2006,[62] evidence which includes a November 10, 2005 MRI of plaintiff's

---

[57]Admin. Rec. at 1355.

[58]Admin. Rec. at 1355.

[59]Admin. Rec. at 1355.

[60]Admin. Rec. at 1356.

[61]Admin. Rec. at 1355-1356.

[62]Admin. Rec. at 358-373.

cervical spine which showed "C5-6 disc herniation posterior and superior to the disc level...."[63]

The second reason given by the ALJ, that "a substantial amount of the medical evidence of record deals with a period after the claimant's date last insured expired[,]"[64] was not a clear and convincing reason. While the ALJ was correct that much of the medical evidence of record dealt with a period after plaintiff's date last insured expired, this has little to do with plaintiff's credibility. All this shows is that plaintiff continued to require treatment for the issues she was having with her neck, left knee, and right foot.

The third reason given by the ALJ was that plaintiff's described daily activities were inconsistent with her statements. The ALJ highlighted[65] that plaintiff had reported to one of her treatment providers that she had been walking around Las Vegas[66] and that she reported in her function report that she could wash dishes, do simple house cleaning, and do light loads of laundry.[67] An "ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work

---

[63]Admin. Rec. at 316.

[64]Admin. Rec. at 1355.

[65]Admin. Rec. at 1355.

[66]On October 7. 2009, plaintiff reported that "[a] week ago she was walking around in Las Vegas, Nevada with friends when she had excruciating pain through the anterior aspect of her knee." Admin. Rec. at 779.

[67]Admin. Rec. at 239.

setting[.]" <u>Molina v. Astrue</u>, 674 F.3d 1104, 1113 (9th Cir. 2012). The ALJ did not explain how plaintiff's ability to do limited household activities and walk around on vacation would be transferable to a work setting. This was not a clear and convincing reason.

The fourth reason given by the ALJ, that plaintiff's neck pain was managed conservatively, was not a clear and convincing reason. The record shows that from 2005 through 2009, in connection with her neck pain, plaintiff did physical therapy twice,[68] took muscle relaxants,[69] had epidural injections twice which provided limited relief,[70] took Vicodin,[71] and took anti-inflammatories.[72] While all of this could be considered conservative management, on January 12, 2010, which was just a few days after plaintiff's date of last insured, Dr. Hall noted that plaintiff "again has failed conservative management. She needs a C6-C7 total disk arthroplasty" and the only reason the surgery was not being done was because plaintiff's insurance company would not approve the surgery.[73] This shows that plaintiff's neck pain was being managed conservatively not because it was not severe but because there was a lack of insurance coverage for more intensive treatment.

---

[68]Admin. Rec. at 363, 712.

[69]Admin. Rec. at 361, 573.

[70]Admin. Rec. at 312, 712.

[71]Admin. Rec. at 573.

[72]Admin. Rec. at 312.

[73]Admin. Rec. at 853.

The fifth reason given by the ALJ, that plaintiff's right foot pain improved with treatment, was not a clear and convincing reason. In 2008, plaintiff repeatedly complained of right foot pain to Dr. Savage.[74] Throughout 2008, she was prescribed pain medication at Silvercreek Medical Associates for her right foot pain.[75] And on November 18, 2008 she had injections for her right foot pain.[76] This evidence does not suggest that plaintiff's right foot pain was improving with treatment, but rather that she continued to have right foot pain despite treatment.

The final reason given by the ALJ was that plaintiff's pain and symptom statements were inconsistent with the medical evidence of record. "[L]ack of medical evidence cannot form the sole basis for discounting pain testimony[.]" Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005). Because the other reasons given by the ALJ were not clear and convincing, this reason by itself is not sufficient to support the ALJ's credibility finding.

In sum, none of the reasons given by the ALJ for finding plaintiff's pain and symptom statements were clear and convincing. The ALJ erred as to plaintiff's credibility.

Because the ALJ erred in not finding plaintiff's left knee impairment severe and in finding plaintiff's pain and symptom statements less than credible, the court must consider whether to remand this matter for further proceedings or whether to remand for an award of

---

[74]Admin. Rec. at 579, 721, 723.

[75]Admin. Rec. at 744-745, 750.

[76]Admin. Rec. at 1112.

benefits. The court follows a three-step analysis to determine whether a remand for an award of benefits would be appropriate. "First, [the court] must conclude that 'the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" Brown-Hunter v. Colvin, 806 F.3d 487, 495 (9th Cir. 2015) (quoting Garrison, 759 F.3d at 1020). "Second, [the court] must conclude that 'the record has been fully developed and further administrative proceedings would serve no useful purpose.'" Id. (quoting Garrison, 759 F.3d at 1020). "Third, [the court] must conclude that 'if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.'" Id. (quoting Garrison, 759 F.3d at 1021). But, "even if all three requirements are met, [the court] retain[s] 'flexibility' in determining the appropriate remedy" and "may remand on an open record for further proceedings 'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'" Id. (quoting Garrison, 759 F.3d at 1021).

If the only error here was the one involving plaintiff's left knee impairment, a remand for further proceedings would be appropriate so that the ALJ could determine in the first instance what limitations flowed from this impairment. However, the ALJ also erred in finding plaintiff's pain and symptom statements not credible. The record is fully developed as to this issue. Plaintiff testified that she could sit for approximately 15 minutes before having to get up and move around, could stand for 10 minutes, could walk for 10 minutes and that she elevated her legs and feet whenever she was not standing, which was 90% of the

day.[77] The vocational expert at the second administrative hearing testified that a person who "had to alternate between sitting and standing at will, and had limited occasional reaching and handling, and was required to elevate her leg at will" would not be able to perform any work.[78] If plaintiff's pain and symptom statements were credited as true, the ALJ would be required to find plaintiff disabled. This not a case in which the record as a whole creates serious doubt as to whether plaintiff is disabled. Thus, a remand for an award of benefits is warranted.

Conclusion

The decision of the Commissioner is reversed and this matter is remanded for an award of benefits.

DATED at Anchorage, Alaska, this 27th day of November, 2017.

/s/ H. Russel Holland
United States District Judge

---

[77]Admin. Rec. at 50-51, 56.

[78]Admin. Rec. at 64.